UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

TERRY S. BYNUM, INDIVIDUALLY, AND
ON BEHALF OF THE WRONGFUL DEATH
BENEFICIARIES OF BENJAMIN BYNUM, JR.,
DECEASED, AND THE ESTATE OF BENJAMIN
G. BYNUM, JR., DECEASED                                    PLAINTIFFS

VS.                          CIVIL ACTION NO. 3:06CV639 TSL-JCS

CITY OF MAGEE, MISSISSIPPI,
SIMPSON COUNTY, MISSISSIPPI,
LANE STEEL, BOBBY J. WILLIAMS,
AND JOHN DOES I-X                                         DEFENDANTS

MEMORANDUM OPINION AND ORDER

This cause is before the court on the separate motions of
defendants City of Magee, Mississippi and Lane Steel (the
Municipal defendants) and defendant Bobby Williams to dismiss.
Plaintiffs Terry Bynum and the Estate of Benjamin G. Bynum, Jr.
have responded in opposition to the motions, and the court, having
considered the parties' memoranda of authorities, concludes that
Williams' motion is well taken and should be granted and that the
Municipal defendants' motion should be granted in part and denied
in part.

Following the death by suicide of Benjamin Bynum, Jr., Mr.
Bynum's son, Terry Bynum, and his estate filed this lawsuit
against the City of Magee, and against Lane Steel, a firefighter
employed by the City, and Simpson County Coroner Bobby J.
Williams, in their individual and official capacities, seeking to
recover damages on account of the death of Benjamin Bynum.

Specifically, plaintiffs seek to recover damages from the City for Benjamin Bynum's death pursuant to 42 U.S.C. § 1983 and under state law, based on allegations that the City, through its agents, violated the elder Bynum's constitutional rights under the Fifth, Eighth and Fourteenth Amendments and breached various duties under state law by failing to prevent his suicide.  Plaintiff Terry Bynum further seeks to recover damages for emotional distress and punitive damages from Steel and Williams on account of their alleged mistreatment of Benjamin Bynum's body following his death.

The pertinent allegations in the complaint are as follows. On Wednesday, December 14, 2005, City of Magee police officers found Benjamin Bynum, Jr., who was suffering from a mental or emotional defect or disease, lying in the middle of a public highway in an apparent suicide attempt.  The police officers took Bynum to his home and released him.  Two days later, on December 16, 2005, City of Magee police and an ambulance were dispatched to Bynum's home in response to a report that he had barricaded himself in a room and was threatening to kill himself.  Although Bynum's family members requested that the police officers enter the home and restrain Bynum, the officers refused to take action. Prior to leaving the residence, one of the officers threatened plaintiff Terry Bynum that if the police were called to the residence again on account of Benjamin Bynum, Jr, he, Terry Bynum, would be arrested for domestic disturbance.  Three days later, on

December 19, 2005, Benjamin Bynum, Jr. committed suicide in his home by setting fire to his residence.  The City of Magee Fire Department was called, and after extinguishing the fire, firefighters loaded the corpses of several dogs that had perished in the fire in the back of a pickup truck.  Then, after Mr. Bynum's body was recovered, Williams, the county coroner, directed the firefighters, including defendant Steel, to put his body into the same truck in which the dog carcasses had been deposited.  This was done, and in full view of Mr. Bynum's family which had gathered at the scene, the pickup truck in which Mr. Bynum's body had been placed with the carcasses of the dead dogs, left the residence.

The City argues that it is entitled to dismissal of the § 1983 claims against it (and against Steel in his official capacity) because the complaint not only fails to state Fourteenth Amendment claims under either the Due Process or Equal Protection Clauses, but also fails to state claims pursuant to the Fifth or Eighth Amendments.  Finally, the Municipal defendants urge that plaintiffs' state law claims are barred by the Mississippi Tort Claims Act, Miss. Code Ann. § 11-46-1 et seq.

In ruling on a motion to dismiss, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff."  In re Katrina Canal Breaches, 2007 WL 220004, * 10 (Fifth Cir. Aug. 2, 2007) (internal quotations and

3

citations omitted).  In order to survive a Rule 12(b)(6) motion to dismiss, "the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"  Id. (quoting Bell Atl. Corp. v. Twombly, --- U.S. ----, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007)).  "'Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).'"  Id. (quoting Bell, at 1965).  With this standard in mind, the court first considers plaintiffs' claims against the City.

When a § 1983 claim is asserted against a municipality, the "proper analysis requires [the court] to separate two different issues[]: (1) whether plaintiff's harm was caused by a constitutional violation, and (2) if so, whether the city is responsible for that violation."  Collins v. City of Harker Heights, 503 U.S. 115, 120, 112 S. Ct. 1061, 1066, 117 L. Ed. 2d 261 (1992).  Here, the City contends that dismissal is warranted because neither the Due Process Clause nor the Equal Protection Clause imposed upon it a duty to either provide medical care to Benjamin Bynum, Jr. or to protect him from himself.  The City further argues that inasmuch as plaintiffs have failed to allege a constitutional violation, their claim that the City failed to train its police and fire employees must likewise fail.

The Due Process Clause of the Fourteenth Amendment provides
that "[n]o State shall . . . deprive any person of life, liberty,
or property, without due process of law." U.S. Const. Amend. XIV,
§ 1. It is by now well established that while individuals have a
substantive due process right to be free from state-occasioned
bodily harm, state officials do not, as a general matter, have a
constitutional duty of care to protect individuals from injuries
caused by themselves or others. See Breen v. Texas A&M Univ., 485
F.3d 325, 333 (5th Cir. 2007) (citing DeShaney v. Winnebago County
Dep't of Soc. Servs., 489 U.S. 189, 196-97, 109 S. Ct. 998, 103 L.
Ed. 2d 249 (1989) ("As a general matter, then, we conclude that a
State's failure to protect an individual against private violence
simply does not constitute a violation of the Due Process
Clause.")). As the Court explained in DeShaney,

> The (Due Process) Clause is phrased as a limitation on
> the State's power to act, not as a guarantee of certain
> minimal levels of safety and security. It forbids the
> State itself to deprive individuals of life, liberty, or
> property without 'due process of law,' but its language
> cannot fairly be extended to impose an affirmative
> obligation on the State to ensure that those interests
> do not come to harm through other means.

489 U.S. at 195, 109 S. Ct. at 1003.

An exception to this general rule of no duty exists for
certain individuals in "special relationships" with the state.
Specifically, affirmative duties of care and protection arise
under the due process clause when the state, "through the
affirmative exercise of its powers, acts to restrain an

5

individual's freedom to act on his own behalf." <u>Beltran v. City of El Paso</u>, 367 F.3d 299, 307 (5th Cir. 2004) (citing <u>McClendon</u>, 305 F.3d at 323).  As to such persons,

> [i]n the substantive due process analysis, it is the
> State's affirmative act of restraining the individual's
> freedom to act on his own behalf-through incarceration,
> institutionalization, or other similar restraint of
> personal liberty-which is the 'deprivation of liberty'
> triggering the protections of the Due Process Clause,
> not its failure to act to protect his liberty interests
> against harms inflicted by other means.

<u>Deshaney</u>, 489 U.S. at 200, 109 S. Ct. at 1006.  In other words, the Constitution "imposes upon the state a duty of care towards individuals who are in the custody of the state."  <u>Breen</u>, 485 F. 3d at 433 (citing <u>DeShaney</u>, 489 U.S. at 200, 109 S. Ct. at 1005) ("[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and well-being.")).

A second exception to which the Supreme Court alluded in <u>DeShaney</u>, a "state-created danger" exception, has been recognized by most of the circuits, including most recently, the Fifth Circuit, which held in <u>Breen</u> that a "plaintiff seeking to recover under [state-created] danger theory must show that (1) 'the defendants used their authority to create a dangerous environment for the plaintiff;' and (2) 'the defendants acted with deliberate indifference to the plight of the plaintiff.'" 485 F. 3d at 330 (quoting <u>Scanlan v. Texas A&M Univ.</u>, 343 F.3d 533 (5th Cir.

6

2003)).  Thus, under the due process clause, the City only has an affirmative duty to protect a person from harm from private actors, if the state has a special relationship with a person, that is, if the state has custody of a person, thus cutting off alternate avenues of aid, or if the state somehow created the danger of harm.

In support of their due process claim in the case at bar, plaintiffs claim that when police officers found Benjamin Bynum lying in the roadway on December 14, 2005 in an apparent suicide attempt, the officers took him into custody.  They then reason that defendants, having taken custody of Mr. Bynum and being aware that Mr. Bynum was suicidal, assumed a duty to hold him in custody for the purpose of providing him with mental health services (or stated conversely, Mr. Bynum, having been taken into police custody, had the right to remain in custody for the purpose of protection and receiving mental health treatment).[1]  More to the point, plaintiffs take the position that when defendants chose to

---

[1]

The officers apparently did not take Mr. Bynum to jail, or even to the police station.  Rather, it appears from the complaint that the officers simply took Mr. Bynum home.  In DeShaney, the Supreme Court defined custody as "the State's affirmative act of restraining the individual's freedom to act on his own behalf. . . ."  489 U.S. at 200, 109 S. Ct. at 1005.  To transport a person from one location to another is not necessarily to take that person into custody.  Whether it is or not depends on the circumstances.  The court, however, will assume for purposes of discussion that Mr. Bynum was in police custody up until the time he was left at his home.

7

pick up Mr. Bynum and detain him, he became a pretrial detainee and should therefore have been afforded the right of a pretrial detainee to "adequate protection from [his] known suicidal impulses," see Thornhill v. Breazeale, 88 F. Supp. 2d 647, 653 (S.D. Miss. 2000), and to necessary psychiatric/medical treatment, see Mace v. City of Palestine, 333 F. 3d 621, 623 (5th Cir. 2003), which defendants violated by releasing him.  Plaintiffs conclude, therefore, that "[t]he fact that Bynum was not in physical custody of the Municipal Defendants at the time he died should not be dispositive of the claim."  In the court's opinion, however, this fact is dispositive.

While persons who are in state custody have a right to some level of care and protection, including protection against suicide, see Hare v. City of Corinth, 74 F.3d 633, 647 n.3 (5th Cir. 1996)), aff'd, 133 F.3d 907 (2d Cir. 1997), the Constitution does not impose upon a city a duty to hold a suicidal individual for the sole purpose of providing him medical care, as is suggested by plaintiffs.  Wilson v. Formigoni, 42 F.3d 1060, 1066 (7th Cir. 1994) ("[T]here is no constitutional right to be deprived of liberty–there is no right to be imprisoned, and none to be involuntarily committed in a mental health facility.");  see also Collignon v. Milwaukee County, 163 F.3d 982, 991-992 (7th Cir. 1998) (stating "[T]he plaintiffs cannot claim that the County defendants should have involuntarily committed Jonathan to a

mental health facility: Due process protects people from being unlawfully restrained; it provides no right to be restrained, lawfully or otherwise."); DeShaney, 489 U.S. at 201, 109 S. Ct. at 1006 (noting that "the State does not become the permanent guarantor of an individual's safety by having once offered him shelter"). Thus, defendants had no constitutional duty to maintain custody of Mr. Bynum for his own protection.

Moreover, once a person is no longer in state custody, he is not in a "special relationship" with the state. This principle was recognized in Townsley v. West Brandywine Township, 2006 WL 1147267 (E.D. Pa. 2006), a case which also involved a due process claim for the defendant Township's alleged failure to prevent a suicide. There, the decedent had been arrested for driving under the influence and placed in a holding cell for a brief period of time. Notwithstanding that he was discovered trying to hang himself while in a holding cell, the defendants did not seek psychiatric help for the decedent and thereafter released him into the custody of a third party, a friend of the decedent, without making the friend aware that he had attempted suicide. The friend took the decedent to his home, where he was left alone. The next morning, he committed suicide. The plaintiff argued that the Township had an affirmative duty to act to protect the decedent's constitutionally protected interests because the decedent was in the state's control or custody. The court rejected this claim

9

"because Decedent's harm occurred after the relationship between Decedent and Defendants was severed by the release of Decedent to a third-party." <u>Id</u>. at *5.  The court emphasized that for a "special relationship" to exist such as to give rise to a duty to protect, the "'state must affirmatively act to curtail the individual's freedom such that he or she can no longer care for him or herself.'" <u>Id</u>. (quoting <u>Henderson v. City of Philadelphia</u>, 1999 WL 482305, at * 5 (E.D. Pa. July 12, 1999)), and observed from this, that "[i]t logically follows that the state's custody over an individual terminates when the state no longer restrains the individual from being able to care for himself– i.e., when the individual is no longer in the state's physical custody." <u>Id</u>. (citing <u>Henderson</u>, 1999 WL 482305 (E.D. Pa. July 12, 1999)).  The court concluded:

> Here, Decedent was in Defendants' custody while he was detained in the holding cell, but that custodial relationship ended–prior to Decedent's harm–because Defendants properly released Decedent into the custody of a third-party friend.  The harm that occurred to Decedent took place well after he was released from custody.  Precedent dictates that upon releasing Decedent, Defendants no longer had a duty to protect him.

<u>Id</u>.  The same analysis applies here.  Mr. Bynum had been released from custody five days before he committed suicide, and therefore was not in a "special relationship" with the City at the time of his suicide that would have given rise to a duty to protect.  <u>See</u> <u>Mroz v. City of Tonawanda</u>, 999 F.Supp. 436, 456–57 (W.D.N.Y. 1998)

10

(granting summary judgment on due process claim for failure to prevent suicide where evidence showed that the decedent, an emotionally disturbed teenager, committed suicide after being released from jail, following one-hour detention, and taken to his home; evidence was undisputed that decedent was not in custody after being taken to his home); cf. Schoenfeld v. City of Toledo, 223 F. Supp. 2d 925 (N.D. Ohio 2002) (police officers who released the plaintiff's decedent after brief detention for purposes of investigation during which they learned of his suicidal tendencies and learned that he had attempted to purchase a gun were not liable on due process claim based on decedent's having subsequently committed suicide in a hotel room).

An alternative basis for imposing a duty to protect is the "state-created" danger theory. However, that theory has no applicability here.[2] To recover on the basis of a state-created danger, the plaintiff must show "that the defendant's actions created or increased the danger to the plaintiff." Breen, 485 F. 3d at 334. The danger to Mr. Bynum was the risk of suicide. However, Mr. Bynum was already vulnerable to suicide at the time he was found by officers, who in fact first encountered him while he was attempting suicide (and who may well have succeeded at that time but for the officers' intervention). The City, through its

---

[2]

Indeed, defendants so argue and plaintiff has not contended otherwise.

officers, did not create that risk nor increase the danger either by picking up Mr. Bynum or by taking him to his home and leaving him there.  That is to say, Mr. Bynum was no more vulnerable to suicide after his encounter with the officers than he was before that encounter.  See Christiansen v. City of Tulsa, 332 F.3d 1270, 1281 (10th Cir. 2003) (where decedent committed suicide during standoff with police, court found no duty to protect under state-created danger theory where "the 'danger' in question –[the decedent's] exposure to a suicide attempt–existed prior to defendants' intervention [so that] defendants [could not] be liable under section 1983 for having 'created' [his] predicament"); Collignon, 163 F. 3d at 992 (no liability where state did not create or increase the risk of suicide by arresting decedent, even where the arrest caused severe emotional distress).  For these reasons, the court concludes that plaintiffs' due process claim must be dismissed.

In addition to their due process claim, plaintiffs contend that defendants violated Mr. Bynum's equal protection rights.  Specifically, they allege,

> On good faith and information and belief, the City of Magee, by and through its police department, has, under similar circumstances, intervened, assisted, and protected similarly situated individuals who were attempting to commit suicide.  Though Benjamin Bynum, Jr. was similarly situated to such individuals for whom assistance has been provided, no assistance was provided to Benjamin Bynum, or his family members, in an effort to protect Benjamin Bynum, Jr.  As a result thereof, Benjamin Bynum, Jr., and Plaintiffs, were not afforded

12

> equal protection under law, and suffered death and
> damages as result thereof, in violation of their
> constitutional rights.

The City initially argues that plaintiffs' equal protection claim
fails because the complaint does not allege that Mr. Bynum was
treated less favorably by the government because of his membership
in a particular protected group or class.  See Griffing v.
Breckenridge, 403 U.S. 88, 91 S. Ct. 1790, 29 L. Ed. 2d 338
(1971).  While it is true that the complaint does not allege that
Mr. Bynum, Jr. was discriminated against because he was a member
of a protected class, the City's argument, as plaintiffs point
out, fails to acknowledge the viability of an equal protection
claim grounded on a "class of one," as recognized by the Supreme
Court in Village of Willowbrook v. Olech, 528 U.S. 562, 120 S. Ct.
1073, 145 L. Ed. 2d 1060 (2000).

Typically, an equal protection claim focuses on the denial of
a fundamental right or disparate treatment of persons depending on
the claimant's suspect classification.  In Olech, however, the
Supreme Court held that a plaintiff may state a "class of one"
equal protection claim if he has been "intentionally treated
differently from others similarly situated and that there is no
rational basis for the difference in treatment."  Id. at 564, 120
S. Ct. 1073.

Here, defendants submit that plaintiffs' allegation that Mr.
Bynum was treated differently from other similarly situated

persons is conclusory and therefore insufficient to withstand a motion to dismiss.  The court concludes otherwise.[3]  Accordingly, the Municipal defendants' motion with regard to the equal protection claim will be denied.

In addition to their § 1983 claim, plaintiffs have asserted a number of state law tort claims against the City grounded on the alleged failure to prevent Mr. Bynum's suicide.  The City argues that all these claims are barred by the Mississippi Tort Claims Act (MTCA), § 11-46-1 et seq.  Specifically, the City takes the position that under § 11-46-9(1)(c) and (d), any state law claims based on the City's failure to enter Bynum's home to restrain him and prevent his suicide, are exempt from the general waiver of immunity for torts committed by governmental employees or agencies, as set out in Miss. Code Ann. § 11-46-5.  Section 11-46-9(1)(c) provides:

> A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim:                       . . .
> (c) Arising out of any act or omission of an employee of a governmental entity engaged in the performance or execution of duties or activities relating to police or fire protection unless the employee acted in reckless disregard of the safety and well-being of any person not engaged in criminal activity at the time of injury.

---

[3]  The issue at this stage of the proceedings is only whether plaintiffs have stated a claim, not whether they ultimately will succeed in proving their allegation of unequal treatment.

(emphasis added).  "Reckless disregard" is "willful or wanton conduct which requires knowingly and intentionally doing a thing or wrongful act."  <u>Maye v. Pearl River County</u>, 758 So. 2d 391, 394 (Miss. 1999).

In response to the City's motion, plaintiffs point out that the complaint specifically alleges that the actions of the officers were "reckless, malicious, intentional, and committed with deliberate indifference and reckless indifference to the health, safety, and continued life of Benjamin Bynum, Jr.," that Mr. Bynum was not engaged in any criminal activity, and that the waiver of § 11-46-9(c) does not apply.[4]  They conclude that in light of these allegations, it will be for the finder of fact "to

---

[4]

As plaintiffs note, the complaint contains the following recitations:

Such acts of Defendants were committed under color of law and under each individual's authority as an officer, agent, or employee of the City of Magee, Mississippi, and were reckless, malicious, intentional, and committed with deliberate indifference and reckless indifference to the health, safety, and continued life of Benjamin Bynum, Jr.

Pursuant to § 11-46-9, Defendants herein have waived immunity from suit for the claims set forth herein, as Defendants acted in reckless disregard for the safety and well-being of Benjamin Bynum, Jr., who was not engaged in criminal activity at the time of injury.  As such, Defendants are liable to Plaintiffs as set forth herein.

At all material times, Defendants herein acted in and with reckless disregard of the safety and well-being of Benjamin Bynum, Jr. and Plaintiffs.

15

determine whether or not the acts of the Municipal Defendants under the facts presented constituted 'reckless disregard' for the safety of Bynum."  Plaintiffs' argument ignores the fact that the issue of immunity under the MTCA is a question of law, which should be resolved at the earliest possible stage of litigation. Chapman v. City of Quitman, 954 So. 2d 468 (Miss. App. 2007).[5]

The question is not, whether the complaint contains the phrase "reckless disregard," but whether, under Mississippi law, the facts as set forth in the complaint (which are assumed to be true) rise to the level of "reckless disregard."  The court is of the opinion that they do not.

In Collins v. Tallahatchie County, 876 So. 2d 284 (Miss. 2004), the plaintiff sued Tallahatchie County for injuries she sustained when she was shot by her husband, who had previously threatened her safety.  She sought to hold the county liable based on the failure of its sheriff's deputies to arrest her husband when they had probable cause to make a warrantless arrest.  In concluding that the exemption of § 11-46-9(1)(c) applied, the court observed that while the deputies' failure to arrest the plaintiff's husband may have constituted negligence, the plaintiff could not show that the deputies knew that they could have or were

---

[5]   The court notes, moreover, that under the MTCA, the court is the fact finder.  See Miss. Code Ann. § 11-46-13(1) ("The judge of the appropriate court shall hear and determine, without a jury, any suit filed under the provisions of this chapter.").

required to arrest plaintiff's husband, and thus their actions (or inaction) did not rise to the level of "reckless disregard."  Id. at 287.

In this case, plaintiffs suggest that defendants should have taken steps to prevent Mr. Bynum from committing suicide; but they have failed to identify the source of any such duty to intervene for his protection.  As the law of Mississippi imposes no duty upon the City defendants to take action on Bynum's behalf, they cannot be said to have acted in "reckless disregard" of his safety or well-being by failing to act in the manner desired by plaintiffs.  Accordingly, the City's motion to dismiss plaintiffs' state law claims will be granted.

Turning to the individual defendants' motions to dismiss based on qualified immunity, the court observes that issues of qualified immunity are determined by a two-step analysis: First the court must determine whether a plaintiff has alleged the violation of a clearly established constitutional right under the current state of the law, and if the plaintiff has alleged such a constitutional violation, the court must decide whether the defendant's conduct was "objectively reasonable," measured by reference to the law as clearly established at the time of the challenged conduct.  Al-Ra'id v. Ingle, 69 F.3d 28, 31 (5th Cir. 1995) (citations omitted).

Plaintiff Terry Bynum, for himself and on behalf of Benjamin Bynum's wrongful death beneficiaries, has asserted what the parties evidently believe to be a due process claim against Williams, the coroner, and Steel, a firefighter, based on allegations that at Williams' direction, Steel (and others) placed Mr. Bynum's body in the back of a pickup truck with the carcasses of dead dogs.[6]  In their motions, these defendants argue that these facts, as set out in the complaint, do not amount to the violation of a clearly established constitutional right.

Under the Fourteenth Amendment, government conduct which deprives "any person of life, liberty or property without due process of law" is forbidden.  To establish a due process claim, a plaintiff "must first identify a protected life, liberty or property interest and then prove that governmental action resulted in a deprivation of that interest."  San Jacinto Sav. & Loan v. Kacal, 928 F.2d 697, 700 (5th Cir. 1991).  To determine the existence of a protectable interest, the court must look to state law.  Id. at 701 n.4.

Plaintiffs take the position that Mississippi recognizes that a deceased's next of kin and relatives have a property interest,

---

[6]

According to plaintiffs, "[t]he gist of [their] claim against Williams-and Defendant Steel-is that such defendants, by and through their acts, deprived Plaintiff[s] of procedural due process rights with respect to Plaintiff's property rights, and those of the wrongful death beneficiaries, with respect to the remains of Bynum."

or quasi-property interest, in the remains of the deceased.   In

support of finding the existence of a protected property right in

human remains under Mississippi law, plaintiffs cite a number of

Mississippi statutes,[7] and case law from Mississippi and other

jurisdictions.   For example, plaintiffs cite <u>Arnold v. Spears</u>, 63

So. 2d 850 (Miss. 1953), and <u>Hamilton v. Chaffin</u>, 506 F. 2d 904

(1975), in support of their contention that Mississippi law

"creates a constitutionally cognizable property interest in the

remains of a deceased."   In <u>Arnold</u>, the Mississippi Supreme Court

recognized that, although a decedent's remains are not "property"

in a commercial sense, his survivors have the right to possession

for burial and one unlawfully interfering with this right may be

liable for damages.   <u>Arnold</u>, 63 So. 2d at 217.   Over twenty years

later, in <u>Hamilton v. Chaffin</u>, 506 F.2d 904, 911 (5th Cir. 1975),

the Fifth Circuit, citing <u>Arnold</u>, noted in dicta that a county

attorney and physician who performed an autopsy without

---

[7]

    <u>See</u> Miss. Code Ann. § 41-37-25 (authorizing a deceased's next
of kin to authorize autopsy); Miss. Code Ann. § 41-39-1 (prior to
expiration of forty-eight hours, dead foetus may not be disposed of
without written consent of the mother or her spouse); Miss. Code
Ann. § 41-39-9 (organ donation statute which purports to recognize
right of heirs of deceased under general law to claim the body of
the deceased); Miss. Code Ann. § 41-39-35 (in cases where
directions to the contrary have not been given, a decedent's
relatives, in prescribed order of priority, may donate part or all
of a decedent's body for the purposes set forth in §§ 41-39-31 and
51).

authorization "may be mulcted in damages for their illegal actions."

For their part, Williams and Steel do not deny that Mississippi law recognizes a property interest or quasi-property interest in the remains of a decedent, but they argue, and correctly so, that the right implicit in the statutes and cases is the right to custody or possession of the body for burial.  Here, plaintiffs do not complain that Mr. Bynum's body was illegally removed from his residence after the fire, or that an unlawful autopsy was performed or, even that his remains were not returned to them for burial in the same condition in which they were found after the fire.  Instead, the crux of their claim is that Williams, by directing that Mr. Bynum's body be placed in the truck with the dogs, and Steel, by placing the body in the truck with the dogs' carcasses, violated their right to have the remains of their loved one treated in a respectful manner.  Contrary to plaintiffs' insistence otherwise, the authorities they cite do not go so far as to recognize the right to have a decedent's remains treated in a "dignified and appropriate manner."  Instead, the right is limited to a possessory interest for burial.  As plaintiffs have failed to demonstrate the existence of a clearly established right, Williams and Steel are entitled to qualified immunity.  Accordingly, the individual defendants' motions to dismiss will be granted.

Based on the foregoing, it is ordered that the motions of Bobby Williams and Lane Steel to dismiss based on qualified immunity are granted.  It is further ordered that the City's motion to dismiss is granted in all respects, save as to plaintiffs' "class of one" equal protection claim and any failure to train claim based thereon.

SO ORDERED this 20th day of August, 2007.

/s/ Tom S. Lee_____
UNITED STATES DISTRICT JUDGE